LAW OFFICE OF
## JESSE M. SIEGEL

(Tel) 212-207-9009  
(Fax) 212-619-6742

299 Broadway, Suite 800  
New York, New York 10007

JesseMSiegel@aol.com

February 27, 2024

**BY ECF**

Hon. Joan M. Azrack, District Judge  
United States District Court for the  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, NY 11201

**Rule 32 Sentencing Memorandum in the Matter of**  
*United States v. Tyrek Clarke,* No. 1:22CR00087-002 (JMA).

Dear Judge Azrack:

     Now 23 years old, Tyrek Clarke was only 19 to 21 years old during the period of the charged conspiracy. He had a difficult upbringing, with an absent father and a mother who kicked him out of their home for weeks at a time to discipline him, starting when he was 12. In junior high school, he suffered from attention deficit hyperactivity disorder (ADHD) and other learning disabilities, which were not meaningfully addressed, and issued an individualized education program (IEP). He has spent the last two years in New York state custody, for a separate offense; while he had disciplinary problems earlier, he has not had any infractions since November 2022.

     Although all the defendants in this case are held liable for the same total loss amount, $522,746.00, the loss attributed to Tyrek, $12,048.00, is the lowest of the eleven defendants, and far lower than many of them.

     Because Tyrek will, on the day of sentencing, have just completed almost two years in prison, during which he has demonstrated increasing maturity and dedication to turning his life around, and for the other reasons alluded to above, we respectfully request the Court sentence Tyrek to an appropriate term of supervised release[1], which we submit would be "sufficient, but

---

[1] The Court may impose a term of supervised release of up to five years. U.S.S.G. § 5D1.2(a)(1).

Hon. Joan M. Azrack
February 27, 2024
Page 2

not greater than necessary" to achieve the purposes of sentencing set forth in Title 18, United States Code, section 3553(a)(2).  18 U.S.C. § 3553(a).

## Personal Background

Tyrek Clarke, 23 years-old, and his two sisters were raised by their mother, an elementary school teacher, under "average" – if modest - economic circumstances. His mother and sisters are aware of this arrest and support him. His father has not been present or influential in his life; Tyrek last spoke to him in 2022. (Presentence Investigation Report ("PSR") ¶¶ 54-56.)

Growing up, Tyrek and his mother had a "rocky" relationship. Starting when he was 12, his mother kicked Tyrek out of the home for weeks at a time, about five times. Tyrek would have to stay with friends and fend for himself. Their relationship has improved; they are now close and communicate daily. (PSR ¶ 57.)

In school, Tyrek had an IEP and suffered from ADHD and other learning disabilities. He started using marijuana at 15, and smoked five to eight blunts daily until about January or February 2022. Although he lasted until the twelfth grade, Tyrek dropped out of school without graduating. (PSR ¶¶ 67-70.)

Given his young age and the fact that he has been incarcerated since he was 21, Tyrek does not have a long work history. He occasionally worked in construction with a family friend between 2014 and 2017. (PSR ¶¶ 71-73.)

Tyrek has one prior conviction, for attempted criminal possession of a weapon in the second degree (a Class D felony) and forcible touching (a Class A misdemeanor). On March 28, 2022, he was sentenced in Kings County Supreme Court to two years of imprisonment and two years of post-release supervision. (PSR ¶ 46.) He was remanded to custody on that date, and has remained since.

Demonstrating his increasing maturity and recognition that he needed help, Tyrek sought out therapeutic counseling while incarcerated, in July 2022. (PSR ¶ 65.)  Also, while he had some disciplinary problems in 2022, he has not had any since November of that year, about 15 months. He participated in high school equivalency courses, took his GED test, and received masonry vocational training. He also held work assignments in food service industries and shop reception.  (PSR ¶ 46.)

Tyrek has been in a "'strong and solid'" relationship with Aquia Parris, a medical assistant at the Westside G.I. Center, since 2021. She and Tyrek communicate daily, and she is supportive of him. (PSR ¶ 59.) A letter from Ms. Parris is attached hereto as **Exhibit A** and discussed below.

Hon. Joan M. Azrack
February 27, 2024
Page 3

## The Offenses, Plea Agreement and Guilty Plea

Tyrek Clarke was arrested on February 27, 2022, and charged in connection with a scheme to defraud the New York State Department of Labor by submitting fraudulent claims for unemployment insurance during the COVID-19 pandemic. Members of the conspiracy purchased personal identifying information of individuals, submitted claims for unemployment insurance using the information, and received payments.

The total loss caused by the fraudulent claims was $522,746.00. The loss caused by claims submitted by Tyrek was $12,048.00, the lowest of any of the defendants. (*See*, PSR ¶ 15.)

Tyrek was charged in four counts of a twenty-four-count indictment with conspiring to commit mail and wire fraud (Count One); conspiring to commit access device fraud (Count Two); committing access device fraud (Count Four); and aggravated identity theft (Count Fifteen).

Pursuant to a plea agreement with the government, Tyrek pled guilty on June 13, 2023, before Magistrate Judge Cheryl L. Pollack, to Count One, conspiracy to commit mail and wire fraud. In the agreement, the government set forth its estimated sentencing guidelines analysis; all the defendants received essentially the same offer, adjusted to take into account the criminal histories of each (including that some defendants qualified as "zero-point offenders," pursuant to U.S.S.G. § 4C1.1). In the plea agreement, which holds him responsible for the total amount of loss for all the claims, $522,746.00, Tyrek agrees that his adjusted total offense level is 20, which yields an advisory sentencing guidelines range, in criminal history category II, of 37 to 46 months.

In the plea agreement, Tyrek also consents to entry of a forfeiture money judgment in the amount of $12,048.00, the amount of gain resulting from the claims submitted by him.

## The Presentence Investigation Report

Probation's guidelines calculation accords with the government's estimate. They find his base offense level is 7, per USSG § 2B1.1(a)(1), and that he receives: a 12-level enhancement because the loss exceeds $250,000.00, per § 2B1.1(b)(1)(G); a 2-level enhancement for using sophisticated means, per § 2B1.1(b)(10(C); a 2-level enhancement for using personal identifying information of real individuals, per § 2B1.1(b)(11); and a 2-level enhancement because the offense involved conduct described in 18 U.S.C. § 1040.   This leads to an Adjusted Offense Level of 25. Probation finds that Tyrek should receive a 3-level reduction for timely acceptance of responsibility, per § 3E1.1(a) and (b); and, if warranted, a 2-level reduction for a global plea. This yields a total offense level of 20, and an advisory guidelines range, in criminal history II, of 37 to 46 months.  (PSR ¶¶ 32-44, 47-48, 91.)

While we agree with Probation's guidelines analysis, it should be noted that, if Tyrek was only held responsible for the loss he personally caused, $12,048.00, he would receive a 2-level enhancement for loss amount, per § 2B1.1(b)(1)(B), rather than a 12-level enhancement. Consequently, his total offense level would be 10 rather than 20, and his advisory guidelines range, in criminal history category II, would be 8 to 14 months.

Probation recommends the Court sentence Tyrek to a 24-month term of imprisonment.

### Sentencing Under Section 3553

The Court is required to impose a sentence that is "sufficient, *but not greater than necessary*" to achieve the purposes of sentencing set forth in Title 18, United States Code, section 3553(a)(2). 18 U.S.C. § 3553(a) (emphasis added). The Second Circuit has underlined this requirement: "Plainly, if a district court were to explicitly conclude that two sentences equally served the statutory purpose of §3553(a), it could not, consistent with the parsimony clause, impose the higher." *United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006).

Thus, a court is to impose the *shortest* sentence that accomplishes the purposes of sentencing.

In determining a sentence, the Court shall consider the factors set forth in section 3553(a), including:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to promote just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant, and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

Hon. Joan M. Azrack
February 27, 2024
Page 5

The Second Circuit has emphasized, "Although the sentencing judge is obliged to consider all of the sentencing factors outlined in Section 3553(a), the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all the circumstances.  That is the historic role of sentencing judges, and it may continue to be exercised."  *United States v. Jones*, 460 F.3d 191, 195 (2d Cir. 2006).

We respectfully submit that, considering the section 3553(a) factors, an appropriate term of supervised release would be "sufficient, but not greater than necessary" to achieve the various purposes of sentencing.

The history and characteristics of the defendant.

There is no question that Tyrek made a bad mistake when he chose to participate in this scheme. It is a decision he regrets now and will always regret.  Yet, no one should be defined solely by the worst things they have done.  Tyrek has many positive attributes that make it reasonable to hope that when he gets past his current legal problems, he can turn his life around and be a productive member of society.

Tyrek clearly exhibited poor judgment here, but he is someone with longtime learning and other disabilities, who had an IEP, and began smoking marijuana excessively at the age of 15. He lacked guidance, as his father was absent, and his relationship with his mother was so fraught that she kicked him out of the house repeatedly, for weeks at a time, starting when he was 12.

Moreover, Tyrek was, when he committed these offenses, extremely young, just 19 to 21 years old. He is still only 23 years old. While old enough to be treated as an adult, such a young person- even a sober one without mental health and drug problems - does not have the maturity and life experience of an older person, and cannot be expected to exhibit the judgment of an older person.  *See, Gall v. United States*, 552 U.S. 38, 57-58 (2007); *Johnson v. Texas*, 509 US 350, 367 (1993); U.S.S.G. section 5H1.1.  In *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016), the Supreme Court held that, except in rare circumstances, juveniles cannot be sentenced to life without parole, based largely on scientific studies showing that young brains are not fully developed in areas relevant to criminal responsibility until the mid-twenties, which Tyrek has not yet reached.

Comments by those who know him best indicate Tyrek has many good qualities, and is maturing and making positives changes in his life. In her letter attached as Exhibit A, his partner, Aquia Parris describes Tyrek as "a passionate, optimistic and generous person," who has always been supportive of her and his loved ones. Further, "Tyrek is a kind and compassionate person who is always willing to help others," and is "always looking for ways to make a positive impact on the world."

Ms. Parris says she was surprised to hear of his misconduct, but notes, "Tyrek expressed deep remorse in making such a serious mistake. He has even talked about doing a whole 360." Toward this end, "He joined programs to obtain his GED, he received his machinery certificate while facing his current case." To assist in turning his life around, she says, "Tyrek has a strong support system in place. I, along with other family members and friends, are committed to helping him through this difficult time and beyond. We will provide him with the support and guidance he need[s] to make positive changes in his life."

Similarly, his mother, who has developed a much closer relationship with Tyrek, described him to Probation "as a person who is always willing to help others." She said she believes he has learned his lesson and is "trying to change his life while taking high school equivalency courses in state custody." (PSR ¶ 55.)

Indeed, as noted above, while in state custody, Tyrek has taken his GED test and is awaiting the results. He has also received masonry vocational training and held work assignments in food service industries and shop reception. Moreover, Tyrek sought out therapeutic counseling, demonstrating insight into the reasons for his actions and dedication to addressing the root causes.

The nature and circumstances of the offense.

We do not mean to minimize the seriousness of the offense to which Tyrek pled guilty. His theft from a government program designed to assist people suffering due to the coronavirus pandemic was selfish, destructive and harmful to the country.

Nonetheless, there are aspects of the crime and Tyrek's role in it that provide mitigation. The crime – and Tyrek's involvement in it – was not violent. Tyrek did not possess a gun or any weapons. He did not play a leadership role in the conspiracy, and it is certainly not the case that this crime would not have happened if he was not involved. To the contrary, Tyrek was the least involved in the conspiracy, as demonstrated by the fact that he was personally responsible for the lowest amount of loss of any of the defendants.

The need for the sentence to reflect the seriousness of the offense; promote respect for the law and just punishment for the offense; and provide general and specific deterrence.

We fully understand that a sentence of supervised release would be unusual in a case like this. But it is not true that only lengthy terms of imprisonment can serve these purposes of sentencing, and there is nothing in these purposes that prevents the Court from imposing a sentence that takes into account Tyrek's personal circumstances. When sentenced, Tyrek will have just finished a two-year, state term of imprisonment, which he began at the age of 21. This experience should provide specific deterrence without additional incarceration.

Hon. Joan M. Azrack
February 27, 2024
Page 7

The need to avoid unwarranted sentencing disparities

      A sentencing court is also to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. section 3553(a)(2)(6). It is often difficult to determine who is similarly situated, especially for defense counsel, as we do not have access to other defendants' Presentence Investigation Reports.

      Here, the Court has so far sentenced two of Tyrek's co-defendants, each of whom is more culpable than him: Romean Brown, who was held responsible for a loss of $15,006.00 (compared to Tyrek's $12,048.00) and sentenced to a 22-month term of imprisonment; and Christopher Jean Pierre, responsible for a loss of $131,992.00 – or more than ten times the loss caused by Tyrek - and sentenced to a 25-month term. We appreciate that both Brown and Jean Pierre had slightly lower advisory sentencing guidelines ranges than Tyrek (27 to 33 vs. 37 to 46), because neither had a criminal record, and all defendants' ranges were based on the total amount of loss. Still, the fact remains that the loss caused by Jean Pierre, in particular, dwarfed that caused by Tyrek, reflecting a far greater involvement in the charged conspiracy. The need to avoid unwarranted disparities supports our request for a lower sentence for Tyrek.

**Conclusion**

      For the foregoing reasons, we respectfully ask the Court not to sentence Tyrek Clarke to additional time in prison, but to impose an appropriate term of supervised release.

      Respectfully Submitted,

      /s/
      Jesse M. Siegel
      *Counsel to Tyrek Clarke*